**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------- x
                                         :
BLOCKCHAIN LUXEMBOURG S.A. &             :
BLOCKCHAIN (US), INC.,                   :
                                         :
                    Plaintiffs,          :          Case No: 1:18-cv-8612
                                         :
         v.                              :          COMPLAINT
                                         :
PAYMIUM, SAS a/k/a BLOCKCHAIN.IO &       :          DEMAND FOR JURY TRIAL
PIERRE NOIZAT,                           :
                                         :
                    Defendants.          :
----------------------------------------------------------- x
```

Plaintiffs Blockchain Luxembourg S.A. ("Blockchain Luxembourg") and Blockchain (US), Inc. ("Blockchain US") (collectively, "Blockchain"), by and through their undersigned attorneys, hereby submit this Complaint against Defendants Paymium, SAS a/k/a ("Paymium") and Pierre Noizat and demand a trial by jury of all the claims and issues so triable.

## NATURE OF THE ACTION

1.      Paymium, a French company with a concerning history of offering insecure digital products, is using Blockchain's intellectual property and making misleading statements in an effort to lure investors to participate in its BLOCKCHAIN.IO-branded initial coin offering ("ICO") under the false pretense that the ICO is connected to Blockchain. This is an action for trademark infringement and unfair competition to prevent consumers from mistakenly investing in an inferior product and to recover damages done to Blockchain and its intellectual property as a result.

2.      Blockchain is the world's largest platform for digital assets.  It has used its BLOCKCHAIN trademarks and service marks to power more than 100 million digital

transactions, valued at over two hundred billion dollars, and to offer reliable, secure digital payments and other trusted financial services to more than 28 million wallets in more than 140 countries in the world, including the United States.

3.    Through Blockchain's more than seven years of exclusive use of its BLOCKCHAIN marks for the Blockchain Products (defined below), the BLOCKCHAIN marks have gained tremendous and invaluable goodwill as consumers recognize them as signifying the credible digital wallet and other financial services that Blockchain provides.

4.    Blockchain's mission is to secure and empower consumers in the digital asset space.

5.    Blockchain does not claim exclusive rights to the word "blockchain" to describe the technology underlying cryptocurrencies, such as bitcoin, and used for virtually limitless other applications and by many industries, of which digital currency is only a small subset.  Rather, it claims exclusive rights in the BLOCKCHAIN marks, which it has been using exclusively for its Blockchain Products and which have become well and favorably known to consumers throughout the United States and the world as identifying its highly regarded and secure services. As a reflection of Blockchain's status and popularity, its website at www.blockchain.com is the first organic result of a Google search for "blockchain."

6.    In 2018, after years of doing business under different trademarks, Paymium adopted the mark BLOCKCHAIN.IO in a blatant and bad faith attempt to capitalize on the valuable and trusted BLOCKCHAIN marks and to confuse consumers into believing that Paymium's inferior services emanate from or are otherwise associated with Blockchain.  In fact, significant consumer confusion has already occurred as a result of Paymium's actions.

2

7.     Remarkably, Paymium has publicly claimed that its ICO had been "registered" with the U.S. Securities and Exchange Commission ("SEC"), a false and misleading claim callously intended to convince potential investors that its offering has been vetted and approved. These acts represent a serious threat to consumers and constitute trademark infringement and unfair competition for which Blockchain seeks injunctive relief and compensatory damages.

## THE PARTIES

8.     Blockchain Luxembourg is a société anonyme company organized under the laws of Luxembourg, with its principal place of business at 1, rue Philippe II, Luxembourg, Luxembourg 2340.

9.     Blockchain US is a corporation organized under the laws of Delaware with a principal place of business in the County, City and State of New York.

10.     On information and belief, Paymium is a société par actions simplifiée company organized under the laws of France, with a principal place of business at 73 rue du Chateau, Boulogne Billancourt, 92100 France.  Paymium maintains a website targeted toward U.S. customers, is soliciting U.S. investors who will and, on information and belief, already have invested in its cryptocurrency services, and has filed a Form D with the SEC in connection with its ICO.

11.     On information and belief, Pierre Noizat is a citizen and resident of Boulogne Billancourt, France.  On information and belief, Mr. Noizat is the founder, Chief Executive Officer and a director of Paymium and has personally directed Paymium to make false and misleading statements designed to persuade consumers that Paymium is associated with

3

Blockchain and to make false statements about the security and regulation of its products, including to consumers and prospective consumers in the U.S.

## JURISDICTION AND VENUE

12.     This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*; the New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350 and 360-L; and the common law of the State of New York.

13.     The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.  This Court has personal jurisdiction over Paymium and Mr. Noizat pursuant to N.Y. C.P.L.R. § 302 because Paymium and Mr. Noizat transact business within New York State and/or have committed tortious acts within the State of New York and committed tortious acts outside the State of New York that have caused injury within the State, including through soliciting and, on information and belief, securing clients and investors who reside in this jurisdiction; advertising, marketing and providing products within New York City and New York State; and making false statements to consumers who reside in this jurisdiction. Paymium and Mr. Noizat expect or should reasonably expect their acts to have consequences in New York State and derive substantial revenue from interstate or international commerce.

14.     Venue is proper in this district under 28 U.S.C. § 1391 because Paymium regularly conducts business in this District, Mr. Noizat regularly directs the acts of Paymium in this District, Mr. Noizat has issued or directed Paymium to issue false or misleading statements to consumers who reside in this District, and/or because a substantial part of the claims arose in this District.

## THE BLOCKCHAIN TRADEMARK

15.     Founded in 2011, Blockchain is one of the world's leading providers of digital currency services and is a recognized global leader in the digital assets industry.

16.     Blockchain's mission is to empower, protect and secure the financial future of users of digital assets.

17.     Blockchain Luxembourg provides a variety of goods and services under the BLOCKCHAIN and BLOCKCHAIN-formative trademarks and service marks in the U.S., including (a) a web-based digital wallet that, much like a physical wallet, can be used to store, safeguard, send and receive digital funds, as well as to request funds, to buy and sell digital currencies to fund the wallets and take advantage of exchange rates, and to exchange a user's funds among different digital assets (for example, exchange between bitcoin, ether and bitcoin cash) (collectively the "Digital Wallet Services"); (b) iOS and Android mobile applications that provide Digital Wallet Services and information on the market prices of cryptocurrencies and that permit businesses to accept digital funds as payment at point of sale locations (for example, at a restaurant or retail store) (the "Mobile App Services"); and (c) a website that provides information on digital currencies, provides the latest data on worldwide digital currency transactions, allows users to search and verify digital currency transactions, and provides developers with APIs for building bitcoin applications (the "Website Services") (collectively, the "Blockchain Products").

18.     Blockchain also provides digital product suites to high-net worth individuals under its BLOCKCHAIN and BLOCKCHAIN PRINCIPLE STRATEGIES marks (the "Suite Services").

19.     Since at least as early as 2011, Blockchain has used the BLOCKCHAIN and BLOCKCHAIN.INFO marks to market, advertise, distribute, offer and provide the Digital Wallet Services and the Website Services to consumers in U.S. interstate commerce.

20.     Since at least as early as 2012, Blockchain has used the BLOCKCHAIN and BLOCKCHAIN MERCHANT marks to market, advertise, distribute, offer, and provide its Mobile App Services to consumers in U.S. interstate commerce.

21.     Since at least as early as 2013, Blockchain has used the BLOCKCHAIN.COM trademark and domain name to market, advertise, distribute, offer and provide the Digital Wallet Services, Website Services and the Mobile App Services to consumers in the U.S. in interstate commerce.

22.     Since at least as early as January 2017, Blockchain has used the BLOCKCHAIN & Design mark depicted below (the "BLOCKCHAIN Design Mark") to market, advertise, distribute, offer and provide its Digital Wallet Services, Website Services and Mobile App Services to consumers in U.S. interstate commerce.



23.     Since at least as early as 2018, Blockchain has used the BLOCKCHAIN, BLOCKCHAIN.COM and BLOCKCHAIN PRINCIPAL STRATEGIES marks to market, advertise, distribute, offer and provide its Suite Services to consumers in U.S. interstate commerce.

24.     Blockchain Luxembourg is the owner of all right, title and interest in and to the BLOCKCHAIN marks, including the word marks BLOCKCHAIN, BLOCKCHAIN.INFO, BLOCKCHAIN.COM, BLOCKCHAIN MERCHANT and BLOCKCHAIN PRINCIPAL STRATEGIES (the "BLOCKCHAIN Word Marks") and the BLOCKCHAIN Design Mark, and all goodwill associated therewith (collectively, the "BLOCKCHAIN Marks").

25.     Blockchain frequently uses shades of blue in the BLOCKCHAIN Design Mark, as depicted below:



26.     Blockchain Luxembourg is the owner of the following federal registration for the BLOCKCHAIN Design Mark (the "BLOCKCHAIN Registration") and owns all right, title and interest in and to the subject mark thereof and all goodwill associated therewith:

| MARK | REG. NO. | SERVICES | STATUS |
|---|---|---|---|
| **BLOCKCHAIN** | 5,512,148 | Class 9: Downloadable software in the nature of a mobile application to send, receive, store, and safeguard digital currency; downloadable software in the nature of a mobile application to access an electronic database of business directory information;<br><br>Class 35: Providing an electronic cloud-based database of business directory information;<br><br>Class 36: Providing financial information; providing financial information via a web site; providing an online computer web site that provides commercial financial transaction data, account management, | Registered July 10, 2018 (based on use since January 2017) |

|  |  | financial reporting, accounting features and related reference information; financial affairs and monetary affairs, namely, financial information, management and analysis services; financial analysis, namely, compiling and analyzing statistics, data and other sources of information for financial purposes; financial information in the nature of rates of exchange; financial information processing; providing an online searchable database featuring financial information about bitcoin transactions;<br><br>Class 42: Providing temporary use of non-downloadable computer software that allows users to send, receive, store, and safeguard digital currency; providing a secure, web-based service featuring technology that enables users to remotely access, send, receive, store, and manage digital currency; providing a website that gives users the ability to create customized web pages featuring user-defined profiles; application service provider featuring application programming interface (API) software for integration of financial transactions into websites and mobile applications |  |
|---|---|---|---|

27.     A printout from the United States Patent and Trademark Office's Trademark Status & Document Retrieval Database showing the current status of the BLOCKCHAIN Registration is annexed hereto as Exhibit A.

28.     Blockchain offers its BLOCKCHAIN-branded products through its BLOCKCHAIN-branded websites at www.blockchain.info and www.blockchain.com and

BLOCKCHAIN-branded mobile applications for both iOS and Android systems.  Screenshots of Blockchain's website showing certain of the products offered in connection with the BLOCKCHAIN Marks are annexed hereto as Exhibit B.

29.     Users of the BLOCKCHAIN-branded web-based and mobile application wallets can exchange their funds among different types of cryptocurrencies (for example, exchange bitcoin for ether or bitcoin cash).

30.     On information and belief, no other provider of goods or services identical or highly related to the Blockchain Products uses or has ever used the trademark BLOCKCHAIN as a brand for those goods or services.

31.     Blockchain has devoted substantial time and resources to advertise and promote the Blockchain Products in connection with the BLOCKCHAIN Marks.

32.     Blockchain enjoys significant revenues derived from its advertising, marketing and offering of the Blockchain Products in connection with the BLOCKCHAIN Marks.

33.     As a result of Blockchain's efforts and in reflection of the trust it has built with consumers, Blockchain is the most popular digital wallet in the world.  Blockchain provides more than 28 million BLOCKCHAIN-branded wallets in 140 countries around the globe, including more than 4.5 million wallets in the United States alone.  The first BLOCKCHAIN-branded wallet from a U.S. IP address was created on December 1, 2011.

34.     Blockchain continues to see unparalleled growth across all of its products and platforms.  One particular surge in users of Blockchain's Products took place in the month of

December 2017, during which it was publicly reported that Blockchain obtained more than a half million new users.

35.     The Blockchain Products have been the subject of considerable unsolicited media attention and acclaim.  For example, bitcoinexchange.com, a website that reviews providers of digital currency services, recognized Blockchain as "one of the internet's best-known bitcoin wallets."  The New York Times called Blockchain "far and away an early leader in bitcoin…enabling the entire ecosystem."  CNBC reported on Blockchain's famous investors including, Google Ventures and billionaire Richard Branson.  As reported by Business Insider, former Prime Minister of the UK David Cameron spoke at Blockchain's London office opening. In addition, the company has received press coverage by the Wall Street Journal, Financial Times, TechCrunch, Fortune, Forbes, Bloomberg, Yahoo Finance, Coindesk, and numerous other media outlets.  Examples of these articles are annexed hereto as Exhibit C.

36.     The Blockchain Products are of the utmost quality and enjoy a strong reputation for their security, safety and reliability.

37.     As a result of Blockchain's continuous efforts in marketing, advertising and maintaining the high quality of the Blockchain Products offered under the BLOCKCHAIN Marks, the BLOCKCHAIN Marks have come to symbolize tremendous goodwill throughout the United States that belongs exclusively to Blockchain.

38.     Consumers recognize the BLOCKCHAIN Marks as identifying goods and services offered exclusively by Blockchain.

39.     The BLOCKCHAIN Marks are inherently distinctive and/or have acquired distinctiveness.

40.     Consumers recognize that the BLOCKCHAIN Marks identify established digital currency services that consumers can trust to securely store their digital currency, provide reliable financial information, and guide their investment and financial decisions.

41.     By virtue of its substantially continuous and exclusive use of the BLOCKCHAIN Marks in connection with the Blockchain Products, as well as substantial investments in marketing, incredible user growth and significant media coverage promoting the BLOCKCHAIN Marks, the BLOCKCHAIN Marks have become well and favorably known and have come to symbolize tremendous and extensive goodwill throughout the United States.

**PAYMIUM'S BAD ACTS**

42.     On information and belief, since 2011, Paymium has been in the business of offering various cryptocurrency services, including cryptocurrency exchanges branded as PAYMIUM and BITCOIN CENTRAL.  Paymium also owned the now defunct mobile wallets branded PAYTUNIA and INSTAWALLET.

43.     On information and belief, Paymium's products and services do not enjoy the same sterling reputation as Blockchain's products.

44.     On information and belief, all of Paymium's acts complained of herein were taken at the direction of or while Paymium was under the control of Mr. Noizat.

45.     On information and belief, all of Paymium's acts complained of herein were committed in an effort to rebrand and mask its past failures under the PAYMIUM, BITCOIN

CENTRAL, PAYTUNIA and INSTAWALLET BRANDS, as detailed below, by siphoning off of Blockchain's intellectual property, customer base and the incredible trust consumers have in the BLOCKCHAIN Marks.

46.     On information and belief, in February 2018, approximately two months after Blockchain announced that it had gained half a million new users of its BLOCKCHAIN-branded services, Paymium announced that it would launch www.blockchain.io as a new platform for its digital currency services and that it would provide those services under the mark BLOCKCHAIN.IO.

47.     Prior to February 2018, Paymium did not use the blockchain.io domain or the trademark BLOCKCHAIN.IO for any goods or services.

48.     Paymium currently is offering its digital currency services under the marks BLOCKCHAIN.IO and the BLOCKCHAIN.IO Design Mark pictured below (collectively, the "Infringing Marks"):



49.     Paymium's digital currency services are identical or nearly identical to Blockchain's Digital Wallet Services, Mobile App Services and Website Services, which allow consumers to exchange one form of digital currency for another, such as bitcoin for ether or bitcoin cash.

50.     On information and belief, in or around September 27, 2018,  Paymium intends to launch an ICO, or token sale, under the Infringing Marks, through which it will gain additional

U.S. investors who will purchase Paymium's BLOCKCHAIN.IO-branded cryptocurrency services. Screenshots of Paymium's website announcing this launch are annexed hereto as Exhibit D.

51.    On information and belief, Paymium has already sold or rendered services under the Infringing Marks to consumers in the United States, including without limitation by securing U.S. investors for its BLOCKCHAIN.IO-branded cryptocurrency services.

52.    On May 23, 2018, Paymium filed a Form D with the SEC, notifying the SEC that it intends to sell securities in the United States.   The filing of a Form D does not mean that a security is "registered" or that it has been in any way scrutinized or approved by the SEC.  To the contrary, it is a filing used by private entities and indicates that the offering is exempt from certain registration requirements.  A copy of Paymium's Form D is annexed hereto as Exhibit E.

53.    On information and belief, Paymium already has offered and sold some securities to U.S. investors in the BLOCKCHAIN.IO-branded digital currency services.

54.    On information and belief, Paymium has partnered with organizations to facilitate their ICO, including cryptoradar, Token Market, Coin Telegraph, Jounal du Coin, Medium, CryptoLingo, ICO Bliss, CCN, Hackernoon, Cryptovest, CoinHills, Cryptocoin, AirDrops Mob, ICO Marks, Decenter, AirDrop Directory, World Coin Index, Coin Schedule, ICO Quest, FX Empire, ICO Bench, Coin Jinga, Found ICO, The Tokener, ICO Champs, ICO Link, BitCoin (France), ICO Calendar, Nulltx, Beyond Blocks, News BTC, Vescripto, Coin Market ICO, Crypto Differ, ET News, Hank Yung News and ICO Detector.

55.     On information and belief, Paymium also uses its BLOCKCHAIN.IO Marks to provide a digital currency wallet identical to Blockchain's Digital Wallet Services and a website with nearly identical information and services as Blockchain's Website Services.

56.     On information and belief, the services offered by Paymium under the BLOCKCHAIN.IO trademark are or will be identical or nearly identical to the services offered by Blockchain under the BLOCKCHAIN Marks.

57.     On information and belief, Paymium's products are and will be far inferior to the Blockchain Products.

58.     On information and belief, Paymium has offered services in the past that have been subject to major hackings and thefts.

59.     On information and belief, Paymium has a history of negligence with consumer information and security protocols.

60.     On information and belief, Paymium's INSTAWALLET-branded product was hacked in 2013, which led to its services being suspended indefinitely.  This hack was discussed in articles and in chatrooms.  Copies of representative articles and chatroom discussions are annexed hereto as Exhibit F.

61.     On information and belief, Paymium's BITCOIN CENTRAL-branded exchange was hacked in 2013.  An article reporting this hack is annexed hereto as Exhibit G.

62.     On information and belief, also in 2013, Paymium's PAYTUNIA-branded wallet was suspended due to a security breach and subsequently did not resume operations.

63.     On information and belief, Paymium's PAYTUNIA-branded and BITCOIN CENTRAL-branded services have both gone offline for several days at a time.

64.     Despite these security breaches, Paymium makes the misleading statement that it has not been hacked since it became operational in 2013, leaving out that it has been operating since 2011 and that it was hacked in 2013.  An excerpt from Paymium's whitepaper showing this false statement is annexed hereto as Exhibit H.

65.     On information and belief, Paymium also advertises itself as providing services that it does not offer, including without limitation so called "atomic swaps".[1]

66.     Paymium also made a public statement that it is "registered with the SEC."  A copy of this statement is annexed hereto as Exhibit I.  Paymium is not "registered with the SEC." The filing of a registration statement with the SEC is a significant undertaking which carries with it the imprimatur of transparency, disclosure and credentialing provided by the federal investor protection laws.  Rather than becoming "SEC registered" for an offering of securities, Paymium is seeking an *exemption* from the filing requirements for its dubious ICO.  Pursuant to such an exemption, on information and belief, Paymium would not engage in the kind of transparency and disclosure it asks the public to rely upon.

67.     Paymium has publicly stated that it would list on its exchange the token sold pursuant to its ICO.  Such a listing of the token would classify Paymium as a National Securities

---

[1] An atomic swap is a technique for exchanging cryptocurrency that, once fully developed, will allow the parties exchanging the currency to verify that the party sending the cryptocurrency has sufficient funds, before the exchange is made.  This technology does not currently exist in a commercial setting.

Exchange or Alternative Trading System in the United States.  On information and belief,
Paymium has taken no steps to apply for such licenses and has no intention to do so.

68.     On information and belief, Paymium made the false and misleading statements
described herein at the direction and under the control of Mr. Noizat.

69.     On information and belief, due to the failures of its BITCOIN CENTRAL,
PAYTUNIA and INSTAWALLET brands and its numerous misleading and false statements,
Paymium has a reputation of offering unstable, unreliable and unsafe products.

**PAYMIUM'S AND MR. NOIZAT'S BAD ACTS
ARE LIKELY TO CONFUSE AND MISLEAD CONSUMERS**

70.     Paymium's acts described herein represent a serious threat to consumers in the
United States.

71.     On information and belief, consumers are investing in Paymium's ICO, assuming
their investment is backed by or affiliated with Blockchain, when it is not.

72.     Paymium's use of the Infringing Marks began long after Blockchain first adopted
the BLOCKCHAIN Marks for the Blockchain Products and is without authorization from
Blockchain.

73.     Blockchain's rights in the BLOCKCHAIN Marks are prior to any trademark or
service mark rights Paymium may have in the Infringing Marks.

74.     The Infringing Marks are confusingly similar to the BLOCKCHAIN Marks.

75.     Paymium's use of the Infringing Marks is likely to cause consumers mistakenly to
believe that the Paymium's products emanate from or are otherwise associated with Blockchain.

16

76.     Paymium's Infringing Marks are virtually identical or closely similar to Blockchain's BLOCKCHAIN Marks and are used in connection with products identical or closely related to the Blockchain Products.

77.     On information and belief, the BLOCKCHAIN.IO Design Mark, the look and feel of Paymium's website, and Paymium's URL are all designed to mimic those of Blockchain.

78.     The BLOCKCHAIN.IO Design Mark mimics the BLOCKCHAIN Design Mark. The BLOCKCHAIN Design Mark is comprised of a two-dimensional square made up of smaller geometric shapes. The BLOCKCHAIN.IO Design Mark is comprised of a three-dimensional square made up of smaller geometric shapes. The BLOCKCHAIN Design Mark is followed by the Blockchain name in dark blue. The BLOCKCHAIN.IO Design Mark is followed by the Blockchain name in slightly different shade of dark blue:

| BLOCKCHAIN Design Mark | BLOCKCHAIN.IO Design Mark |
|---|---|
|  |  |

79.     The dominant color of Paymium's website is the same as the dominant color of Blockchain's website: dark blue.

80.     Except for two letters, Paymium's URL www.blockchain.io is identical to Blockchain's URL www.blockchain.info.

81.     Paymium's Infringing Marks are used in connection with products that are identical or closely related to the products Blockchain offers under the BLOCKCHAIN Marks.

82.     Paymium markets, advertises and renders its products under the Infringing Marks in the same channels of trade in which Blockchain provides the Blockchain Products under the BLOCKCHAIN Marks.

83.     On information and belief, Paymium and Mr. Noizat knew of Blockchain's existing rights in and to the BLOCKCHAIN Marks for the Blockchain Products before announcing their intention to use the blockchain.io URL and the Infringing Marks for products closely related to the Blockchain Products.

84.     On information and belief, Paymium and Mr. Noizat knew of Blockchain's existing rights in and to the BLOCKCHAIN Marks for the Blockchain Products before announcing their intention to launch an ICO.

85.     On information and belief, Paymium and Mr. Noizat knew of Blockchain's existing rights in and to the BLOCKCHAIN Marks for the Blockchain Products before soliciting or securing U.S. investors in Paymium's cryptocurrency services offered under the Infringing Marks.

86.     On information and belief, Paymium commenced use of the Infringing Marks in bad faith.

87.     On information and belief, Mr. Noizat directed Paymium to commence use of the Infringing Marks in bad faith.

18

88.     Such improper use of the Infringing Marks by Paymium is likely to cause confusion, mistake and/or deception among the public as to the source of Paymium's Products.

89.     Due to Paymium's bad acts, consumers already have actually confused the source of Paymium's products offered under the Infringing Marks with the Blockchain Products offered under the BLOCKCHAIN Marks.

90.     On information and belief, Paymium has used and is using the Infringing Marks as described above in a blatant attempt to trade on the enormous and valuable goodwill associated with the BLOCKCHAIN Marks.

91.     On information and belief, Paymium has used and is using the Infringing Marks as described above to identify and attract attention and consumers to its products and business and to interfere with and disrupt the business and operations of Blockchain operating in United States commerce.

92.     Paymium's acts described herein have caused Blockchain irreparable harm for which it has no adequate remedy at law, including without limitation by harming Blockchain's reputation and the goodwill in its BLOCKCHAIN Marks and by diverting investors who might otherwise have purchased the Blockchain Products.

93.     Paymium's acts described herein are harming the public as any mistaken belief by consumers that Paymium's products offered under the Infringing Marks emanate from or are otherwise associated with Blockchain likely will cause consumers to take part in Paymium's ICO under the misimpression that they are purchasing the high quality, reliable services associated with the BLOCKCHAIN Marks.

**FIRST CAUSE OF ACTION**
**(INFRINGEMENT OF A REGISTERED TRADEMARK**
**UNDER FEDERAL LAW)**

94.     Paragraphs 1-93 above are realleged and reincorporated herein by reference as if set forth in full.

95.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause confusion, to cause mistake and to deceive as to the source, origin or sponsorship of Paymium's products.

96.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause the public wrongly to associate Blockchain with Paymium, to believe that Blockchain is somehow affiliated or connected with Paymium and/or to confuse Paymium and its products with those of Blockchain.

97.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

98.     Paymium and Mr. Noizat, individually, are liable to Blockchain for infringement of the BLOCKCHAIN Registration in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## SECOND CAUSE OF ACTION
## (UNFAIR COMPETITION UNDER FEDERAL LAW)

99.     Paragraphs 1-98  above are realleged and reincorporated herein by reference as if set forth in full.

100.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause confusion, to cause mistake and to deceive as to the source, origin or sponsorship of Paymium's products.

101.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause the public wrongly to associate Blockchain with Paymium, to believe that Blockchain is somehow affiliated or connected with Paymium and/or to confuse Paymium and its products with those of Blockchain.

102.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

103.     Paymium and Mr. Noizat, individually, are liable to Blockchain for trademark infringement in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## THIRD CAUSE OF ACTION
## (FALSE ADVERTISING UNDER FEDERAL LAW)

104.    Paragraphs 1-103 above are realleged and reincorporated herein by reference as if set forth in full.

105.    Paymium's false and misleading statements, including that it is registered with the SEC and that it provides or will provide products that are unavailable, made at the direction or under the control of Mr. Noizat constitute false or misleading descriptions of fact with respect to the nature, characteristics, qualities and/or geographic origin of Paymium's products.

106.    Paymium's threatened continued use of the Infringing Marks and certain representations made in its marketing of the products sold under the Infringing Marks, including at the direction or under the control of Mr. Noizat, constitute false or misleading descriptions of fact with respect to the nature, characteristics, qualities and/or geographic origin of Paymium's products.

107.    Paymium and Mr. Noizat, individually, are liable to Blockchain for false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

## FOURTH CAUSE OF ACTION
## (DECEPTIVE ACTS AND PRACTICES UNLAWFUL
## UNDER NEW YORK STATE LAW)

108.    Paragraphs 1-107 above are realleged and reincorporated herein by reference as if set forth in full.

109.    Paymium and Mr. Noizat, individually, are liable to Blockchain for deceptive acts and/or practices unlawful in violation of N.Y. Gen. Bus. Law § 349.

22

## FIFTH CAUSE OF ACTION
## (FALSE ADVERTISING UNDER NEW YORK STATE LAW)

110.    Paragraphs 1-109 above are realleged and reincorporated herein by reference as if set forth in full.

111.    Paymium and Mr. Noizat, individually, are liable to Blockchain for false advertising in violation of N.Y. Gen. Bus. Law § 350.

## SIXTH CAUSE OF ACTION
## (INJURY TO BUSINESS REPUTATION AND DILUTION
## UNDER NEW YORK STATE LAW)

112.    Paragraphs 1-111 above are realleged and reincorporated herein by reference as if set forth in full.

113.    Paymium and Mr. Noizat, individually, are liable to Blockchain for violations of N.Y. Gen. Bus. Law § 360-L.

## SEVENTH CAUSE OF ACTION
## (UNFAIR COMPETITION UNDER NEW YORK COMMON LAW)

114.    Paragraphs 1-113 above are realleged and reincorporated herein by reference as if set forth in full.

115.    Paymium and Mr. Noizat, individually, are liable to Blockchain for unfair competition under New York Common Law.

## EIGHTH CAUSE OF ACTION
### (MISAPPROPRIATION UNDER NEW YORK COMMON LAW)

116.     Paragraphs 1-115 above are realleged and reincorporated herein by reference as if set forth in full.

117.     Blockchain has a property interest in the BLOCKCHAIN Marks and associated reputation and goodwill, which Blockchain, at significant expense, has built up through the use, advertising and promotion thereof.

118.     The conduct of Paymium, including at the direction or under the control of Mr. Noizat, is commercially immoral and constitutes an attempt to profit from the labor, skill, expenditures, name and reputation of Blockchain.

119.     Paymium and Mr. Noizat, individually, are liable to Blockchain for misappropriation under New York Common Law.

WHEREFORE, Blockchain prays that the Court:

(i)     preliminarily and permanently enjoin Paymium's and Mr. Noizat's acts of trademark infringement, unfair competition, false advertising, deceptive acts and practices unlawful, injury to business reputation and misappropriation;

(ii)     award Blockchain compensatory damages as provided by law in an amount to be determined at trial in excess of $10,000,000;

(iii)     award Blockchain enhanced and/or statutory damages as provided by law;

(iv)     award Blockchain punitive damages as provided by law;

(v)     award Blockchain its costs, disbursements and attorneys' fees incurred in bringing this action; and

(vi)    award Blockchain such other and further relief as the Court may deem just

and proper.

Dated:  New York, New York               Respectfully submitted,
        September 20, 2018

                                         FRANKFURT KURNIT KLEIN & SELZ, P.C.

                                         By:  /s/ *Edward H. Rosenthal*
                                             Edward H. Rosenthal
                                             Maura J. Wogan
                                             Kimberly M. Maynard
                                             488 Madison Avenue, 10th Floor
                                             New York, NY  10022
                                             Tel:  212.980.0120
                                             Email: erosenthal@fkks.com
                                                    mwogan@fkks.com
                                                    kmaynard@fkks.com

                                         *Attorneys for Plaintiff Blockchain Luxembourg, S.A.
                                         and Blockchain (US), Inc.*