**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

BLOCKCHAIN LUXEMBOURG S.A. &
BLOCKCHAIN (US), INC.,

              Plaintiffs,

           v.

PAYMIUM, SAS a/k/a BLOCKCHAIN.IO &
PIERRE NOIZAT,

              Defendants.

-------------------------------------------------------- X

Case No: 1:18-cv-8612

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Blockchain Luxembourg S.A. ("Blockchain Luxembourg") and Blockchain

(US), Inc. ("Blockchain US") (collectively, "Blockchain"), by and through their undersigned

attorneys, hereby submit this Amended Complaint against Defendants Paymium, SAS a/k/a

("Paymium") and Pierre Noizat and demand a trial by jury of all the claims and issues so triable.

## NATURE OF THE ACTION

1.      Paymium, a French company with a concerning history of offering insecure

digital products, is using Blockchain's intellectual property and making false and misleading

statements in an effort to lure investors to purchase its products and participate in its

BLOCKCHAIN.IO-branded initial coin offering ("ICO") under the false pretense that Paymium

and its ICO are connected to Blockchain.  This is an action for trademark infringement, unfair

competition, and false advertising to prevent consumers from mistakenly investing in an inferior

product and to recover damages done to Blockchain and its intellectual property as a result.

2.      Blockchain is the world's largest platform for digital assets.  It has used its

BLOCKCHAIN trademarks and service marks to power more than 100 million digital

transactions, valued at over two hundred billion dollars, and to offer reliable, secure digital payments and other trusted financial services to more than 32 million wallets in more than 140 countries in the world, including the United States.

3.     Through Blockchain's more than seven years of exclusive use of its BLOCKCHAIN marks for the Blockchain Products (defined below), the BLOCKCHAIN marks have gained tremendous and invaluable goodwill as consumers recognize them as signifying the credible digital wallet, cryptocurrency exchange, and other financial services that Blockchain provides.

4.     Blockchain's mission is to secure and empower consumers in the digital asset space.

5.     Blockchain does not claim exclusive rights to the word "blockchain" to describe the technology underlying cryptocurrencies, such as bitcoin, and used for virtually limitless other applications and by many industries, of which digital currency is only a small subset.  Rather, it claims exclusive rights in the BLOCKCHAIN marks that it has been using exclusively for its Blockchain Products and that have become well and favorably known to consumers throughout the United States and the world as identifying its highly regarded and secure services.  As a reflection of Blockchain's status and popularity, its website at www.blockchain.com is the first organic result of a Google search for "blockchain."

6.     In 2018, after years of doing business under different trademarks, Paymium adopted the mark BLOCKCHAIN.IO in a blatant and bad faith attempt to capitalize on the valuable and trusted BLOCKCHAIN marks and to confuse consumers into believing that

Paymium's inferior services emanate from or are otherwise associated with Blockchain.  In fact, significant consumer confusion has already occurred as a result of Paymium's actions.

7.     Remarkably, Paymium has publicly claimed in its commercial advertising that its ICO was "registered" with the U.S. Securities and Exchange Commission ("SEC")—a false and misleading claim callously intended to convince investors and potential investors that its offering has been vetted and approved by regulatory bodies like the SEC.  It has made additional deceptive claims in its commercial advertising and promotion, including false and misleading statements about its security history and its ability to offer a service called "atomic swaps."

8.     These acts constitute trademark infringement, unfair competition and false advertising.  They also pose a serious threat both to consumers and to Blockchain.  Accordingly, Blockchain seeks injunctive relief and compensatory damages.

## THE PARTIES

9.     Blockchain Luxembourg is a société anonyme company organized under the laws of Luxembourg, with its principal place of business at 1, rue Philippe II, Luxembourg, Luxembourg 2340.

10.    Blockchain US is a corporation organized under the laws of Delaware with a principal place of business in the County, City and State of New York.

11.    On information and belief, Paymium is a société par actions simplifiée company organized under the laws of France, with a principal place of business at 73 rue du Chateau, Boulogne Billancourt, 92100 France.  Paymium maintains a website targeted toward U.S. customers, is soliciting U.S. investors who will and, on information and belief, already have

invested in its cryptocurrency services, and has filed a Form D with the SEC in connection with its ICO.

12.     On information and belief, Pierre Noizat is a citizen and resident of Boulogne Billancourt, France.  On information and belief, Mr. Noizat is the founder, Chief Executive Officer and a director of Paymium, and controls the acts committed and statements made by Paymium and is the only individual who has controlled Paymium since its inception in 2011. Mr. Noizat has personally directed Paymium to make false and misleading statements designed to persuade consumers that Paymium is associated with Blockchain.  He has also directed Paymium to make false statements about the security and regulation of its products, including to consumers and prospective consumers in the U.S.

## JURISDICTION AND VENUE

13.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350 and 360-L; and the common law of the State of New York.

14.     The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.  This Court has personal jurisdiction over Paymium and Mr. Noizat pursuant to N.Y. C.P.L.R. § 302 because Paymium and Mr. Noizat transact business within New York State and/or have committed tortious acts within the State of New York and committed tortious acts outside the State of New York that have caused injury within the State, including through soliciting and, on information and belief, securing clients and investors who reside in this jurisdiction; advertising, marketing and providing products within New York City and New York State; and making false statements to consumers who reside in this jurisdiction.

Paymium and Mr. Noizat expect or should reasonably expect their acts to have consequences in New York State and derive substantial revenue from interstate or international commerce.

15.     Venue is proper in this district under 28 U.S.C. § 1391 because Paymium regularly conducts business in this District, Mr. Noizat regularly directs the acts of Paymium in this District, Mr. Noizat has issued or directed Paymium to issue false or misleading statements to consumers who reside in this District, and/or because a substantial part of the claims arose in this District.

## THE BLOCKCHAIN TRADEMARK

16.     Founded in 2011, Blockchain is one of the world's leading providers of digital currency services and is a recognized global leader in the digital assets industry.

17.     Blockchain's mission is to empower, protect and secure the financial future of users of digital assets.

18.     Blockchain Luxembourg provides a variety of goods and services under the BLOCKCHAIN and BLOCKCHAIN-formative trademarks and service marks in the U.S., including (a) a web-based digital wallet that, much like a physical wallet, can be used to store, safeguard, send and receive digital funds, as well as to request funds, to buy and sell digital currencies to fund the wallets and take advantage of exchange rates, and to exchange a user's funds among different digital assets (for example, exchange between bitcoin, ether and bitcoin cash) (collectively the "Digital Wallet Services"); (b) iOS and Android mobile applications that provide Digital Wallet Services and information on the market prices of cryptocurrencies and that permit businesses to accept digital funds as payment at point of sale locations (for example, at a restaurant or retail store) (the "Mobile App Services"); and (c) a website that provides

information on digital currencies, provides the latest data on worldwide digital currency transactions, allows users to search and verify digital currency transactions, and provides developers with APIs for building bitcoin applications (the "Website Services") (collectively, the "Blockchain Products").

19.     Blockchain also provides digital product suites to high-net worth individuals under its BLOCKCHAIN and BLOCKCHAIN PRINCIPLE STRATEGIES marks (the "Suite Services").

20.     Since at least as early as 2011, Blockchain has used the BLOCKCHAIN trademark to market, advertise, distribute, offer and provide the Digital Wallet Services and the Website Services to consumers in U.S. interstate commerce.

21.     Since at least as early as 2012, Blockchain has used the BLOCKCHAIN and BLOCKCHAIN MERCHANT marks to market, advertise, distribute, offer, and provide its Mobile App Services to consumers in U.S. interstate commerce.

22.     Since at least as early as 2013, Blockchain has used the BLOCKCHAIN.COM trademark and domain name to market, advertise, distribute, offer and provide the Digital Wallet Services, Website Services and the Mobile App Services to consumers in the U.S. in interstate commerce.

23.     Since at least as early as January 2017, Blockchain has used the BLOCKCHAIN & Design mark depicted below (the "BLOCKCHAIN Design Mark") to market, advertise, distribute, offer and provide its Digital Wallet Services, Website Services and Mobile App Services to consumers in U.S. interstate commerce.

6



24.     Since at least as early as 2018, Blockchain has used the BLOCKCHAIN, BLOCKCHAIN.COM and BLOCKCHAIN PRINCIPAL STRATEGIES marks to market, advertise, distribute, offer and provide its Suite Services to consumers in U.S. interstate commerce.

25.     Beginning in 2011, Blockchain also used the trademark BLOCKCHAIN.INFO to market, advertise, distribute, offer and provide the Digital Wallet Services and the Website Services to consumers in U.S. interstate commerce.

26.     Blockchain Luxembourg is the owner of all right, title and interest in and to the BLOCKCHAIN marks, including the word marks BLOCKCHAIN, BLOCKCHAIN.INFO, BLOCKCHAIN.COM, BLOCKCHAIN MERCHANT and BLOCKCHAIN PRINCIPAL STRATEGIES (the "BLOCKCHAIN Word Marks") and the BLOCKCHAIN Design Mark, and all goodwill associated therewith (collectively, the "BLOCKCHAIN Marks").

27.     Blockchain frequently uses shades of blue in the BLOCKCHAIN Design Mark, as depicted below:



28.     Blockchain Luxembourg is the owner of the following federal registration for the BLOCKCHAIN Design Mark (the "BLOCKCHAIN Registration") and owns all right, title and interest in and to the subject mark thereof and all goodwill associated therewith:

7

| MARK | REG. NO. | SERVICES | STATUS |
|---|---|---|---|
| ◆ **BLOCKCHAIN** | 5,512,148 | Class 9: Downloadable software in the nature of a mobile application to send, receive, store, and safeguard digital currency; downloadable software in the nature of a mobile application to access an electronic database of business directory information;<br><br>Class 35: Providing an electronic cloud-based database of business directory information;<br><br>Class 36: Providing financial information; providing financial information via a web site; providing an online computer web site that provides commercial financial transaction data, account management, financial reporting, accounting features and related reference information; financial affairs and monetary affairs, namely, financial information, management and analysis services; financial analysis, namely, compiling and analyzing statistics, data and other sources of information for financial purposes; financial information in the nature of rates of exchange; financial information processing; providing an online searchable database featuring financial information about bitcoin transactions;<br><br>Class 42: Providing temporary use of non-downloadable computer software that allows users to send, receive, store, and safeguard digital currency; providing a secure, web-based service featuring technology that enables users to remotely access, send, receive, store, and manage digital currency; providing a website that gives users the ability to create customized web pages featuring user-defined profiles; application service | Registered July 10, 2018 (based on use since January 2017) |

|  |  | provider featuring application programming interface (API) software for integration of financial transactions into websites and mobile applications |  |
|---|---|---|---|

29.     A printout from the United States Patent and Trademark Office's Trademark Status & Document Retrieval Database showing the current status of the BLOCKCHAIN Registration is annexed hereto as Exhibit A.

30.     Blockchain has offered and offers its BLOCKCHAIN-branded products through its BLOCKCHAIN-branded website at www.blockchain.info and www.blockchain.com and BLOCKCHAIN-branded mobile applications for both iOS and Android systems.  Screenshots of Blockchain's website showing certain of the products offered in connection with the BLOCKCHAIN Marks are annexed hereto as Exhibit B.

31.     Users of the BLOCKCHAIN-branded web-based and mobile application wallets can exchange their funds among different types of cryptocurrencies (for example, exchange bitcoin for ether or bitcoin cash).

32.     On information and belief, Blockchain enjoys substantially exclusive use of its BLOCKCHAIN trademarks for the Blockchain Products.

33.     Blockchain has devoted substantial time and resources to advertise and promote the Blockchain Products in connection with the BLOCKCHAIN Marks.

34.     Blockchain enjoys tens of millions of dollars in revenue derived from its advertising, marketing and offering of the Blockchain Products in connection with the BLOCKCHAIN Marks.

35.     As a result of Blockchain's efforts and in reflection of the trust it has built with consumers, Blockchain is the most popular digital wallet in the world and the United States. Blockchain provides more than 32 million BLOCKCHAIN-branded wallets in 140 countries around the globe, including more than 4.5 million wallets in the United States alone.  The first BLOCKCHAIN-branded wallet from a U.S. IP address was created on December 1, 2011.

36.     Blockchain continues to see unparalleled growth across all of its products and platforms.  One particular surge in users of Blockchain's Products took place in the month of December 2017, during which it was publicly reported that Blockchain obtained more than a half million new users.

37.     Indeed, in that last year, the number of digital wallets provided by Blockchain under its BLOCKCHAIN trademark increased by approximately 10 million, with more than 9 million of those wallets created since February 2018.  In the United States, more than 3 million additional BLOCKCHAIN-branded wallets have been created in the last year, with most of those created since February 2018.

38.     Blockchain's wallets each rely on proprietary and unique software code, which belongs exclusively to Blockchain.  Like many other companies that develop software in-house, Blockchain posts this proprietary code on GitHub.com, a repository hosting service that allows coders and software programmers to collaborate and communicate with each other.  By posting its code on GitHub.com, Blockchain allows the public to review its code, test it for security and

suggest improvements that can make the code more secure and less susceptible to hacking. When Blockchain posts its code on GitHub.com, it grants other GitHub.com users a limited scope license to copy and make temporary additions to the code—all within the confines of the GitHub.com platform.  It does not grant anyone permission to take the code and use it outside of the GitHub.com platform, for any other purpose.

39.     The Blockchain Products have been the subject of considerable unsolicited media attention and acclaim.  For example, bitcoinexchange.com, a website that reviews providers of digital currency services, recognized Blockchain as "one of the internet's best-known bitcoin wallets."  The New York Times called Blockchain "far and away an early leader in bitcoin…enabling the entire ecosystem."  CNBC reported on Blockchain's famous investors including, Google Ventures and billionaire Richard Branson.  As reported by Business Insider, former Prime Minister of the UK David Cameron spoke at Blockchain's London office opening. In addition, the company has received press coverage by the Wall Street Journal, Financial Times, TechCrunch, Fortune, Forbes, Bloomberg, Yahoo Finance, Coindesk, and numerous other media outlets.  Examples of these articles are annexed hereto as Exhibit C.

40.     The Blockchain Products are of the utmost quality and enjoy a strong reputation for their security, safety and reliability.

41.     As a result of Blockchain's continuous efforts in marketing, advertising and maintaining the high quality of the Blockchain Products offered under the BLOCKCHAIN Marks, the BLOCKCHAIN Marks have come to symbolize tremendous goodwill throughout the United States that belongs exclusively to Blockchain.

42.     Consumers recognize the BLOCKCHAIN Marks as signifying that the Blockchain Products emanate from or are affiliated with the same source.

43.     The BLOCKCHAIN Marks are inherently distinctive and/or have acquired distinctiveness for the Blockchain Products.

44.     Consumers recognize that the BLOCKCHAIN Marks identify established digital currency services that consumers can trust to securely store and exchange their digital currency, provide reliable financial information, and guide their investment and financial decisions.

45.     By virtue of its substantially continuous and exclusive use of the BLOCKCHAIN Marks in connection with the Blockchain Products, as well as substantial investments in marketing, incredible user growth and significant media coverage promoting the BLOCKCHAIN Marks, the BLOCKCHAIN Marks have acquired secondary meaning and have become well and favorably known as symbolizing tremendous and extensive goodwill throughout the United States.

**PAYMIUM'S BAD ACTS**

*Paymium Has A History Of Security Issues*

46.     On information and belief, since 2011, Paymium has been in the business of offering various cryptocurrency services, including cryptocurrency exchanges branded as PAYMIUM and BITCOIN CENTRAL.  Paymium also owned the now defunct digital wallets branded PAYTUNIA and INSTAWALLET.

47.     Paymium has a history of being negligent with consumer information and security protocols.  As a result, its services have been subject to major hackings and thefts.

48.     Paymium's INSTAWALLET-branded product was hacked in 2013, which led to its services being suspended indefinitely.  This hack was discussed in articles and in chatrooms. Copies of representative articles and chatroom discussions are annexed hereto as <u>Exhibit D</u>.

49.     Paymium's BITCOIN CENTRAL-branded exchange was hacked in 2013.  An article reporting this hack is annexed hereto as <u>Exhibit E</u>.

50.     Also in 2013, Paymium's PAYTUNIA-branded wallet was suspended due to a security breach and subsequently did not resume operations.

51.     Paymium's PAYTUNIA-branded and BITCOIN CENTRAL-branded services have both gone offline for several days at a time.

52.     Due to the failures of its BITCOIN CENTRAL, PAYTUNIA and INSTAWALLET brands and its numerous misleading and false statements, Paymium has a reputation of offering unstable, unreliable and unsafe products.

***Paymium Rebrands as BLOCKCHAIN.IO in an Effort to Disassociate from Its Failed Brands and Capitalize on the Goodwill in the BLOCKCHAIN Marks***

53.     In February 2018, approximately two months after Blockchain announced that it had gained half a million new users of its BLOCKCHAIN-branded services, Paymium announced that it would launch www.blockchain.io as a new platform for its digital currency services and that it would provide those services not under its prior brands, but under the mark BLOCKCHAIN.IO.

54.     Paymium did not use the blockchain.io domain or the trademark BLOCKCHAIN.IO for any goods or services prior to February 2018 and, on information and

belief, Paymium did not use the BLOCKCHAIN.IO trademark until after Blockchain's

BLOCKCHAIN, BLOCKCHAIN MERCHANT, BLOCKCHAIN.INFO and

BLOCKCHAIN.COM trademarks acquired distinctiveness for the Blockchain Products,

including cryptocurrency exchange services and digital wallets.

55.     Paymium currently is offering its digital currency services under the marks

BLOCKCHAIN.IO and the BLOCKCHAIN.IO Design Mark pictured below (collectively, the

"Infringing Marks"):



56.     Paymium's digital currency services are identical or nearly identical to

Blockchain's cryptocurrency exchange services and other Digital Wallet Services, as well as its

Mobile App Services and Website Services.

57.     In fact, on information and belief Paymium copied the proprietary software code

that Blockchain uses for its digital wallets and is using that code for its own related services.

Blockchain's code was publicly available, via GitHub.com, during the time period that Paymium

was developing its own wallet services.  However, Blockchain has never authorized Paymium to

use its original code, nor does the GitHub.com site allow community users to take code from

within the site and use it in applications outside the site, as Paymium appears to have done.

58.     On information and belief, Paymium uses or will use its BLOCKCHAIN.IO

Marks to provide services identical to those offered by Blockchain, including a cryptocurrency

exchange, a digital currency wallet identical to Blockchain's Digital Wallet Services, and a website with nearly identical information and services as Blockchain's Website Services.

59.     The services offered by Paymium under the BLOCKCHAIN.IO trademark are or will be identical or nearly identical to the services offered by Blockchain under the BLOCKCHAIN Marks.

60.     Paymium's products have not enjoyed the same sterling reputation as the Blockchain Products and, on information and belief, will continue to be far inferior to the Blockchain Products.

61.     Paymium's acts complained of herein were committed in an effort to rebrand and mask its past failures under the PAYMIUM, BITCOIN CENTRAL, PAYTUNIA and INSTAWALLET BRANDS by siphoning off of Blockchain's intellectual property, customer base and the incredible trust consumers have in the BLOCKCHAIN Marks.

***Paymium Launches An ICO To Capitalize On Its Manufactured Association With Blockchain***

62.     On September 27, 2018, Paymium launched an ICO, or token sale, under the Infringing Marks, through which it gained additional U.S. investors who purchased Paymium's BLOCKCHAIN.IO-branded cryptocurrency services.  Screenshots of Paymium's website announcing this launch are annexed hereto as Exhibit F.

63.     Through both this ICO and other efforts, Paymium has already sold or rendered services under the Infringing Marks to consumers in the United States, including without limitation by securing U.S. investors for its BLOCKCHAIN.IO-branded cryptocurrency services.

64.     On May 23, 2018, Paymium filed a Form D with the SEC, notifying the SEC that it intends to sell securities in the United States.  The filing of a Form D does not mean that a security is "registered" or that it has been in any way scrutinized or approved by the SEC.  To the contrary, it is a filing used by private entities and indicates that the offering is exempt from certain registration requirements.  A copy of Paymium's Form D is annexed hereto as <u>Exhibit G</u>.

65.     On information and belief, Paymium already has offered and sold some securities to U.S. investors in the BLOCKCHAIN.IO-branded digital currency services.

66.     On information and belief, Paymium has partnered with organizations to facilitate their ICO, including cryptoradar, Token Market, Coin Telegraph, Jounal du Coin, Medium, CryptoLingo, ICO Bliss, CCN, Hackernoon, Cryptovest, CoinHills, Cryptocoin, AirDrops Mob, ICO Marks, Decenter, AirDrop Directory, World Coin Index, Coin Schedule, ICO Quest, FX Empire, ICO Bench, Coin Jinga, Found ICO, The Tokener, ICO Champs, ICO Link, BitCoin (France), ICO Calendar, Nulltx, Beyond Blocks, News BTC, Vescripto, Coin Market ICO, Crypto Differ, ET News, Hank Yung News and ICO Detector.

***Paymium Makes False Claims In Its Advertising, Hoping To Gain Additional Purchasers***

67.     Despite its record of security breaches and that it has been operating since 2011, in a February 2018 manifesto to investors, Paymium stated it "has been operating hack-free since 2013."  A reasonable consumer would understand this statement to mean that Paymium has had no hacking incidents whatsoever since it became operational in 2011, or at least since 2012.  That message is objectively false, since, as previously alleged, Paymium began operating in 2011 and was hacked several times in 2013.

68.     Moreover, Paymium made this false claim within a section entitled "Highest Security, Reliability, and Accountability Standards", confirming that this statement was designed as a commercial advertisement to promote the company's (false) clean security record, deceptively represent Paymium's as providing more secure services than its competitors, including Blockchain, and induce consumers to participate in its ICO or purchase its services. An excerpt from Paymium's whitepaper showing this false statement is annexed hereto as Exhibit H.

69.     Paymium also advertises itself as providing services that it does not offer, including without limitation so called "atomic swaps".  An atomic swap is a technique for exchanging cryptocurrency that, once fully developed, will allow the party receiving the currency to verify that the party sending the cryptocurrency has sufficient funds, before the exchange is made.  On information and belief this technology does not currently exist in a commercial setting.

70.     In a November 7, 2018 blog post on its website available to consumers in New York, Paymium wrote about the benefits of atomic swaps, that "[a]t Blockchain.io, we are using a combination of centralized and decentralized features to make atomic swaps simpler, easier, and more efficient to use."  That post, entitled "Understanding Blockchain.io's Decentralized Settlement Feature: Trade Without Counterparty Risk" necessarily implies that Paymium offers atomic swaps under its BLOCKCHAIN.IO brand, and that this is another security feature designed to deceive consumers into believing that Paymium's services are better than those of its competitors, including Blockchain and to induce consumers to participate in the ICO or otherwise purchase Paymuim's products.  A copy of this blog post is annexed hereto as Exhibit I.

71.     Upon information and belief, Paymium does not offer atomic swaps because they are not yet a viable technology.  Accordingly, this claim is literally false.

72.     Paymium has made other false statements about its security and integrity.  In June 2018, Paymium tweeted: "We are pleased to announce our filing has been accepted and we are now registered with the SEC!"  A copy of this statement is annexed hereto as <u>Exhibit J</u>.  The company made similar statements in other platforms such as its Telegram chat.  A copy of this statement is annexed hereto as <u>Exhibit K</u>.  These statements, aimed at consumers in New York and around the world, were designed to promote Paymium's services as more transparent and secure than those of its competitors, and influence potential Paymium purchasers to choose Paymium's products and to participate in its ICO.

73.     The claim that Paymium is "registered with the SEC" is objectively false. Paymium is not "registered with the SEC."  The filing of a registration statement with the SEC is a significant undertaking which carries with it the imprimatur of transparency, disclosure and credentialing provided by the federal investor protection laws.  Rather than becoming "SEC registered" for an offering of securities, Paymium is seeking an *exemption* from the filing requirements for its dubious ICO.  Pursuant to such an exemption, on information and belief, Paymium would not engage in the kind of transparency and disclosure it asks the public to rely upon.

74.     The statement that Paymium is "registered with the SEC" is also misleading.  A reasonable consumer would understand that statement to mean that the SEC is now regulating Paymium and ensuring that it abides by various safeguards of the U.S. Securities laws, which are designed to protect consumers and investors.  The statement also suggests that the SEC has

endorsed Paymium's company and services.  These messages are false, and consumers are likely to be materially deceived by them.

75.     Paymium's false and misleading statements that it has not been hacked since 2013, that it offers atomic swaps, and that it is registered with the SEC, are all commercial advertisements that are likely to deceive consumers into purchasing Paymium's BLOCKCHAIN.IO-branded products and/or participating in its ICO when they otherwise would not.

76.     Paymium also has publicly stated that it would list on its exchange the token sold pursuant to its ICO.  Such a listing of the token would classify Paymium as a National Securities Exchange or Alternative Trading System in the United States.  On information and belief, Paymium has taken no steps to apply for such licenses and has no intention to do so.

## PAYMIUM'S BAD ACTS
## ARE LIKELY TO CONFUSE AND MISLEAD CONSUMERS

77.     Paymium's acts described herein represent a serious threat to consumers in the United States.

78.     On information and belief, consumers are investing in Paymium's ICO, assuming their investment is backed by or affiliated with Blockchain, when it is not.

79.     Paymium's use of the Infringing Marks began long after Blockchain first adopted the BLOCKCHAIN Marks for the Blockchain Products and is without authorization from Blockchain.

80.    Blockchain's rights in the BLOCKCHAIN Marks are prior to any trademark or service mark rights Paymium may have in the Infringing Marks.

81.    The Infringing Marks are confusingly similar to the BLOCKCHAIN Marks.

82.    Paymium's use of the Infringing Marks is likely to cause consumers mistakenly to believe that the Paymium's products emanate from or are otherwise associated with Blockchain.

83.    Paymium's Infringing Marks are virtually identical or closely similar to Blockchain's BLOCKCHAIN Marks and are used in connection with products identical or closely related to the Blockchain Products.

84.    On information and belief, the BLOCKCHAIN.IO Design Mark, the look and feel of Paymium's website, and Paymium's URL are all designed to mimic those of Blockchain.

85.    The BLOCKCHAIN.IO Design Mark mimics the BLOCKCHAIN Design Mark. The BLOCKCHAIN Design Mark is comprised of a two-dimensional square made up of smaller geometric shapes. The BLOCKCHAIN.IO Design Mark is comprised of a three-dimensional square made up of smaller geometric shapes. The BLOCKCHAIN Design Mark is followed by the Blockchain name in dark blue. The BLOCKCHAIN.IO Design Mark is followed by the Blockchain name in slightly different shade of dark blue:

| BLOCKCHAIN Design Mark | BLOCKCHAIN.IO Design Mark |
| :---: | :---: |
|  |  |

86. The dominant color of Paymium's website is the same as the dominant color of Blockchain's website: dark blue.

87. Except for two letters, Paymium's URL www.blockchain.io is identical to Blockchain's URL www.blockchain.info.

88. Paymium's Infringing Marks are used in connection with products that are identical or closely related to the products Blockchain offers under the BLOCKCHAIN Marks.

89. Paymium markets, advertises and renders its products under the Infringing Marks in the same channels of trade in which Blockchain provides the Blockchain Products under the BLOCKCHAIN Marks.

90. On information and belief, Paymium commenced use of the Infringing Marks in bad faith, including in an effort to distance itself from its prior, failed brands and to capitalize on the immense goodwill in the BLOCKCHAIN Marks.

91. Such improper use of the Infringing Marks by Paymium is likely to cause confusion, mistake and/or deception among the public as to the source of Paymium's Products.

92. Due to Paymium's bad acts, consumers already have actually confused the source of Paymium's products offered under the Infringing Marks with the Blockchain Products offered under the BLOCKCHAIN Marks.

93.     On information and belief, Paymium has used and is using the Infringing Marks as described above in a blatant attempt to trade on the enormous and valuable goodwill associated with the BLOCKCHAIN Marks.

94.     On information and belief, Paymium has used and is using the Infringing Marks as described above to identify and attract attention and consumers to its products and business and to interfere with and disrupt the business and operations of Blockchain operating in United States commerce.

95.     Paymium's acts described herein have caused Blockchain irreparable harm for which it has no adequate remedy at law, including without limitation by harming Blockchain's reputation and the goodwill in its BLOCKCHAIN Marks and by diverting investors who might otherwise have purchased the Blockchain Products.

96.     Paymium's acts described herein are harming the public as any mistaken belief by consumers that Paymium's products offered under the Infringing Marks emanate from or are otherwise associated with Blockchain likely will cause consumers to take part in Paymium's ICO under the misimpression that they are purchasing the high quality, reliable services associated with the BLOCKCHAIN Marks.

## MR. NOIZAT IS PERSONALLY LIABLE

97.     On information and belief, Mr. Noizat directs and controls the acts of and statements made by Paymium.

98.     On information and belief, Mr. Noizat has directed and controlled Paymium since its formation in 2011, and is the sole individual to have control or a controlling position over

Paymium during since its inception, including when Paymium operated under its now disgraced and defunct PAYTUNIA, INSTAWALLET, and BITCOIN CENTRAL brands.

99.     On information and belief, Mr. Noizat owns a registration in France for the trademark BLOCKCHAIN.IO.

100.     On information and belief, all of Paymium's acts complained of herein were taken at the direction of or while Paymium was under the control of Mr. Noizat.

101.     On information and belief, Paymium and Mr. Noizat knew of Blockchain's existing rights in and to the BLOCKCHAIN Marks for the Blockchain Products before announcing their intention to use the blockchain.io URL and the Infringing Marks for products closely related to the Blockchain Products.

102.     On information and belief, Paymium and Mr. Noizat knew of Blockchain's existing rights in and to the BLOCKCHAIN Marks for the Blockchain Products before announcing their intention to launch an ICO.

103.     On information and belief, Paymium and Mr. Noizat knew of Blockchain's existing rights in and to the BLOCKCHAIN Marks for the Blockchain Products before soliciting or securing U.S. investors in Paymium's cryptocurrency services offered under the Infringing Marks.

104.     On information and belief, Mr. Noizat directed Paymium to commence use of the Infringing Marks in bad faith.

105.    On information and belief, Mr. Noizat directed Paymium to make false statements about prior hackings, the offering of atomic swaps, and the company's registration with the SEC.

**FIRST CAUSE OF ACTION**
**(INFRINGEMENT OF A REGISTERED TRADEMARK**
**UNDER FEDERAL LAW)**

106.    Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

107.    Blockchain owns all right, title and interest in and to the BLOCKCHAIN Registration.

108.    Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause confusion, to cause mistake and to deceive as to the source, origin or sponsorship of Paymium's products.

109.    Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause the public wrongly to associate Blockchain with Paymium, to believe that Blockchain is somehow affiliated or connected with Paymium and/or to confuse Paymium and its products with those of Blockchain.

110.    Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

111.     Paymium and Mr. Noizat, individually, are liable to Blockchain for infringement of the BLOCKCHAIN Registration in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## SECOND CAUSE OF ACTION
### (UNFAIR COMPETITION UNDER FEDERAL LAW)

112.     Paragraphs 1-[__]  above are realleged and reincorporated herein by reference as if set forth in full.

113.     Blockchain owns all right, title and interest in and to the BLOCKCHAIN Marks.

114.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause confusion, to cause mistake and to deceive as to the source, origin or sponsorship of Paymium's products.

115.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause the public wrongly to associate Blockchain with Paymium, to believe that Blockchain is somehow affiliated or connected with Paymium and/or to confuse Paymium and its products with those of Blockchain.

116.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

117.     Paymium and Mr. Noizat, individually, are liable to Blockchain for trademark infringement in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## THIRD CAUSE OF ACTION
### (FALSE ADVERTISING UNDER FEDERAL LAW)

118.     Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

119.     Blockchain and Paymium are direct competitors.

120.     Paymium's false and misleading statements, including: (1) that it has been operating hack-free since 2013; (2) that it is registered with the SEC; and (3) that it provides or will provide products that are unavailable, made at the direction or under the control of Mr. Noizat, constitute false or misleading descriptions of fact with respect to the nature, characteristics, qualities and/or geographic origin of Paymium's products.  These statements are likely to mislead, or have misled, consumers about the nature, characteristics, and quality of Paymium's products.

121.     Paymium's threatened continued use of the Infringing Marks and certain representations made in its marketing of the products sold under the Infringing Marks, including at the direction or under the control of Mr. Noizat, constitute false or misleading descriptions of fact with respect to the nature, characteristics, qualities and/or geographic origin of Paymium's products.

122.     Paymium is willfully, knowingly, and intentionally making false representations and descriptions of its products so as to deceive, mislead, and confuse consumers into believing, among other things, that Paymium's products are superior to Blockchain's and or that those products emanate from or are affiliated with Blockchain.

123.    Paymium's false and/or misleading statements have a tendency to deceive a substantial portion of its intended audience of potential purchasers or investors and, upon information and belief, have actually deceived consumers.

124.    Paymium's false and/or misleading statements are material, in that they are likely to influence consumers' purchasing or investing decisions and/or describe an inherent quality of Paymium's products.

125.    Paymium's products are offered in interstate commerce and its false and misleading statements have been disseminated nationwide.

126.    Paymium's false and misleading statements, and threatened continued false and misleading statements, including those made at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

127.    Paymium and Mr. Noizat, individually, are liable to Blockchain for false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**FOURTH CAUSE OF ACTION**
**(DECEPTIVE ACTS AND PRACTICES UNLAWFUL**
**UNDER NEW YORK STATE LAW)**

128.    Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

129.    Paymium's deceptive acts, including its deceptive use of the BLOCKCHAIN.IO trademark and its false and misleading advertising, are consumer oriented because they appear in

consumer-facing literature and media, including in the company's online advertising, press releases, blogs, website, and social media platforms.

130.    Given the novelty of cryptocurrency markets, exchanges, and related services, consumers are particularly reliant on – and susceptible to – statements in industry publications and literature.  As such, Paymium's deceptive conduct is material because it is likely to influence and mislead reasonable consumers who rely on it when deciding whether to participate in the ICO or otherwise use Paymium's products.

131.    Paymium's deceptive acts and practices affect the public interest in New York because, upon information and belief, consumers located in New York have suffered injury by purchasing Paymium's products in reliance on its deceptive acts and practices.

132.    Paymium's deceptive conduct also affects Blockchain by causing and threatening irreparable injury for which there is no adequate remedy at law.

133.    Paymium and Mr. Noizat, individually, are liable to Blockchain for deceptive acts and/or practices unlawful in violation of N.Y. Gen. Bus. Law § 349.

## FIFTH CAUSE OF ACTION
### (FALSE ADVERTISING UNDER NEW YORK STATE LAW)

134.    Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

135.    As set forth above, the deceptive acts and practices at issue concern Paymium's advertisement activities.

136.     Paymium's deceptive conduct has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

137.     Paymium's deceptive conduct has caused Blockchain damage to its business, reputation and goodwill, and the loss of sales and profits Blockchain would have made but for Paymium's acts, in an amount to be determined at trial.

138.     Additionally, Paymium has received revenue in the form of investors and sales of its products caused by its deceptive acts and practices, in an amount to be determined at trial.

139.     Thus the aforesaid acts and conduct of Paymium violate N.Y. Gen. Bus. Law § 350.

<u>**SIXTH CAUSE OF ACTION**</u>
**(INJURY TO BUSINESS REPUTATION AND DILUTION**
**UNDER NEW YORK STATE LAW)**

140.     Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

141.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause confusion, to cause mistake and to deceive as to the source, origin or sponsorship of Paymium's products; to dilute the distinctive quality of the BLOCKCHAIN Marks; and/or to cause injury to Blockchain's business reputation.

142.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

143.     Paymium and Mr. Noizat, individually, are liable to Blockchain for violations of N.Y. Gen. Bus. Law § 360-L.

## SEVENTH CAUSE OF ACTION
### (UNFAIR COMPETITION UNDER NEW YORK COMMON LAW)

144.     Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

145.     Blockchain owns all right, title and interest in and to the BLOCKCHAIN Marks.

146.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause confusion, to cause mistake and to deceive as to the source, origin or sponsorship of Paymium's products.

147.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, are likely to cause the public wrongly to associate Blockchain with Paymium, to believe that Blockchain is somehow affiliated or connected with Paymium and/or to confuse Paymium and its products with those of Blockchain.

148.     Paymium's use and threatened continued use of the Infringing Marks, including at the direction or under the control of Mr. Noizat, has caused and threatens Blockchain with irreparable injury for which it has no adequate remedy at law.

149.     Paymium and Mr. Noizat, individually, are liable to Blockchain for unfair competition under New York Common Law.

## EIGHTH CAUSE OF ACTION
### (MISAPPROPRIATION UNDER NEW YORK COMMON LAW)

150.   Paragraphs 1-[__] above are realleged and reincorporated herein by reference as if set forth in full.

151.   Blockchain has a property interest in the BLOCKCHAIN Marks and associated reputation and goodwill, which Blockchain, at significant expense, has built up through the use, advertising and promotion thereof.

152.   The conduct of Paymium, including at the direction or under the control of Mr. Noizat, is commercially immoral and constitutes an attempt to profit from the labor, skill, expenditures, name and reputation of Blockchain.

153.   Paymium and Mr. Noizat, individually, are liable to Blockchain for misappropriation under New York Common Law.

WHEREFORE, Blockchain prays that the Court:

(i)   preliminarily and permanently enjoin Paymium's and Mr. Noizat's acts of trademark infringement, unfair competition, false advertising, deceptive acts and practices unlawful, injury to business reputation and misappropriation;

(ii)   award Blockchain compensatory damages as provided by law in an amount to be determined at trial in excess of $10,000,000;

(iii)   award Blockchain enhanced and/or statutory damages as provided by law;

(iv)   award Blockchain punitive damages as provided by law;

(v)   award Blockchain its costs, disbursements and attorneys' fees incurred in bringing this action; and

31

(vi)     award Blockchain such other and further relief as the Court may deem just

and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Blockchain hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, a trial by jury in this action.

Dated:  New York, New York           Respectfully submitted,
        February 1, 2019

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _/s/ Edward H. Rosenthal_
     Edward H. Rosenthal
     Maura J. Wogan
     Kimberly M. Maynard
     488 Madison Avenue, 10th Floor
     New York, NY  10022
     Tel:  212.980.0120
     Email: erosenthal@fkks.com
            mwogan@fkks.com
            kmaynard@fkks.com

*Attorneys for Plaintiff Blockchain Luxembourg, S.A.
and Blockchain (US), Inc.*